## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **KIMBERLY TAYLOR and KENDALL TAYLOR,** | Civil Case No.: 3:23-cv-545 |
| **Plaintiffs,** | |
| **v.** | **DEMAND FOR JURY TRIAL** |
| **JAVITCH BLOCK, LLC and CKS PRIME INVESTMENTS, LLC,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiffs Kimberly Taylor and Kendall Taylor, by and through the undersigned counsel, complains, states, and alleges against defendants Javitch Block, LLC and CKS Prime Investments, LLC as follows:

### NATURE OF THE ACTION

1.      Plaintiffs bring this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq*., for Defendants' unlawful conduct.

### JURISDICTION AND VENUE

2.      This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C § 1692 and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiffs reside in the Northern District of Ohio, and Defendants conduct business in the Northern District of Ohio, and a substantial portion of the events or omissions giving rise to the claims occurred within Northern District of Ohio.

4.      Plaintiff Kimberly Taylor ("Ms. Taylor") is a natural person who is a citizen of the State of Ohio, residing in Lima, Ohio.

5.      Plaintiff Kendall Taylor ("Mr. Taylor") is a natural person who is a citizen of the State of Ohio, residing in Lima, Ohio.

6.      Mr. Taylor and Ms. Taylor are collectively referred to hereinafter as the "Plaintiffs.

7.      Defendant Javitch Block, LLC ("JBLLC") is a company existing under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio.

8.      JBLLC regularly collects or attempts to collect debts asserted to be owed to others.

9.      JBLLC regularly collects or attempts to collect debts asserted to be owed to others by residents in this County.

10.     JBLLC regularly collects or attempts to collect debts asserted to be owed to others by Ohio consumers.

11.     JBLLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

12.     JBLLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers in this County.

13.     JBLLC is regularly engaged, for profit, in the collection of debts allegedly owed by Ohio consumers.

14.     The principal purpose of JBLLC's business is the collection of such debts.

15.     The principal purpose of JBLLC's business in this County is the collection of such debts.

16.     The principal purpose of JBLLC's business in Ohio is the collection of such debts.

2

17.     JBLLC uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

18.     JBLLC uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business in this County.

19.     JBLLC uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business in Ohio.

20.     JBLLC derives substantial revenue from its debt collection services rendered in Ohio.

21.     JBLLC has committed tortious acts within Ohio that have caused injury to consumers in this County.

22.     JBLLC has committed tortious acts within Ohio that have caused injury to Ohio consumers.

23.     Defendant CKS Prime Investments, LLC ("CKS") is a company existing under the laws of the State of Virginia, with its principal place of business in Chesapeake, Virginia.

24.     CKS regularly collects or attempts to collect debts asserted to be owed to others.

25.     CKS regularly collects or attempts to collect debts asserted to be owed to others by residents in this County.

26.     CKS regularly collects or attempts to collect debts asserted to be owed to others by Ohio consumers.

27.     CKS is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

28.     CKS is regularly engaged, for profit, in the collection of debts allegedly owed by consumers in this County.

29.     CKS is regularly engaged, for profit, in the collection of debts allegedly owed by Ohio consumers.

30.     The principal purpose of CKS's business is the collection of such debts.

31.     The principal purpose of CKS's business in this County is the collection of such debts.

32.     The principal purpose of CKS's business in Ohio is the collection of such debts.

33.     CKS uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

34.     CKS uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business in this County.

35.     CKS uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business in Ohio.

36.     CKS derives substantial revenue from its debt collection services rendered in Ohio.

37.     CKS has committed tortious acts within Ohio that have caused injury to consumers in this County.

38.     CKS has committed tortious acts within Ohio that have caused injury to Ohio consumers.

39.     JBLLC and CKS are collectively referred to hereinafter as the "Defendants."

**FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS**

40.     Defendants allege Plaintiffs owe a debt to CKS for a debt originally owed to WebBank for a Lending Club loan.

41.     In an attempt to collect the alleged debt, JBLLC, on behalf of CKS, sent Ms. Taylor a letter, dated March 22, 2022.

4

42. The letter stated, alleged, or otherwise implied that Ms. Taylor no longer owed money to WebBank/Lending Club, but now $21,073.02 was owed to CKS.

43. Then, JBLLC, on behalf of CKS, sent Mr. Taylor a letter, dated March 25, 2022.

44. The letter stated, alleged, or otherwise implied that Mr. Taylor no longer owed money to WebBank/Lending Club, but now $21,073.02 was owed to CKS.

45. However, Plaintiffs were never indebted to CKS, and were never indebted to CKS for $21,073.02.

46. Debt scavengers purchase large CSV files or Excel spreadsheets of purported "accounts" from credit card companies or other debt scavengers for pennies on the dollar. These files are usually without account-level documentation establishing that the amount sought is correct, and without sufficient proof of the debt scavenger's legal right, title and/or interest in the money sought. By paying so little for the debt, debt scavengers stand to make tremendous amounts of money when unsuspecting or easily confused consumers pay even a small portion of the money sought.

47. According to data provided by the Consumer Financial Protection Bureau (the "CFPB"), consumer complaints about debt buyers and collectors attempting to collect money not actually owed by the consumer are by far the most common of all complaints received by the Bureau every year.

48. Upon information and belief, CKS is a debt scavenger.

49. Upon information and belief, CKS purchases large CSV files or Excel spreadsheets of purported "accounts" and merely uploads said data into its account management system without reviewing any of the information regarding any individual account or balance allegedly owed.

50.     Upon information and belief, after uploading these data, CKS begins to attempt to collect the accounts without performing any inquiry into the account or balance allegedly owed.

51.     Upon information and belief, CKS purchased a CSV file or Excel spreadsheet that included Plaintiffs' names, but failed to include account-level documentation, such as a credit agreement signed by Plaintiffs or any other competent proof that Plaintiffs owed the amount sought to establish CKS's legal right, title and/or interest in $21,073.02 allegedly owed by Plaintiffs.

52.     Indeed, Plaintiffs were never indebted to CKS for $21,073.02 and CKS never extended credit to Plaintiffs for $21,073.02.

53.     Plaintiffs were never involved in any transaction with CKS for $21,073.02 and never entered into any contract with CKS for the payment of $21,073.02.

54.     Upon information and belief, JBLLC does not possess competent proof that Plaintiffs owe $21,073.02 to CKS.

55.     Upon information and belief, CKS does not possess competent proof that Plaintiffs owe CKS $21,073.02.

56.     Upon information and belief, JBLLC does not possess any credit agreement between Plaintiffs and CKS for $21,073.02.

57.     Upon information and belief, CKS does not possess any credit agreement between CKS and Plaintiffs for $21,073.02.

58.     Upon information and belief, JBLLC does not possess competent proof that Plaintiffs agreed to pay $21,073.02 to CKS.

59.     Upon information and belief, CKS does not possess competent proof that Plaintiffs agreed to pay CKS $21,073.02.

60.    Upon information and belief, JBLLC does not possess any competent proof that Plaintiffs are obligated to pay $21,073.02 to CKS.

61.    Upon information and belief, CKS does not possess any competent proof that Plaintiffs are obligated to pay CKS $21,073.02.

62.    Upon information and belief, JBLLC does not possess any competent proof that $21,073.02 was ever owed by Plaintiffs to CKS.

63.    Upon information and belief, CKS does not possess any competent proof that $21,073.02 was ever owed to CKS by Plaintiffs.

64.    Upon information and belief, JBLLC does not possess any competent proof that Plaintiffs owed $21,073.02 at the time CKS allegedly purchased the portfolio of debt.

65.    Upon information and belief, CKS does not possess any competent proof that Plaintiffs owed $21,073.02 at the time CKS allegedly purchased the portfolio of debt.

66.    JBLLC holds no legal right, title, or interest in $21,073.02 owed by Plaintiffs.

67.    CKS holds no legal right, title, or interest in $21,073.02 owed by Plaintiffs.

68.    Nevertheless, in its efforts to collect the money, JBLLC decided to contact Plaintiffs by letter.

69.    Rather than preparing and mailing such letters to Plaintiffs on its own, JBLLC decided to utilize a third-party to perform such activities on its behalf.

70.    As part of its utilization of the third-party, JBLLC conveyed information regarding Plaintiffs and the alleged debt to the third-party by electronic means.

71.    The information conveyed by JBLLC to the third-party, which, upon information and belief, was viewed by employees of the third-party, contained Plaintiffs' personal and private information including personal identifying data, among other things.

7

72.     The third-party then populated some or all this information into a prewritten template, printed, and mailed the correspondence to Plaintiffs at JBLLC's direction.

73.     The letter, dated March 22, 2022, was received and read by Ms. Taylor.

74.     The letter was the initial written communication Ms. Taylor received from JBLLC.

75.     The letter, dated March 25, 2022, was received and read by Mr. Taylor.

76.     The letter was the initial written communication Mr. Taylor received from JBLLC.

77.     Under § 1692g(a) of the FDCPA, within five days of an initial communication with a consumer, a debt collector must provide a written notice, known as a "Validation Notice," that contains relevant information about the alleged debt and how to dispute it.

78.     Pursuant to the FDCPA § 1692g(a), the debt collector must:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1)    the amount of the debt;
>
> (2)    the name of the creditor to whom the debt is owed;
>
> (3)    a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4)    a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5)    a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

79.     Pursuant to Regulation F of 12 CFR § 1006.34(b)(5) "Validation period means the period starting on the date that a debt collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information. For purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is at least five days (excluding legal public holidays identified in 5 U.S.C. 70003(a), Saturdays, and Sundays) after the debt collector provides it."

80.     The March 22, 2022 letter sent to Ms. Taylor stated, in the relevant part, "**Call or write to us by May 01, 2022, to dispute all or part of the debt.** If you do not, we will assume that our information is correct."

81.     The March 22, 2022 letter provided Ms. Taylor a deadline of May 1, 2022, to dispute the alleged debt, request validation, and/or request the name and address of the original creditor.

82.     The March 25, 2022 letter sent to Mr. Taylor stated, in the relevant part, "**Call or write to us by May 04, 2022, to dispute all or part of the debt.** If you do not, we will assume that our information is correct."

83.     The March 25, 2022 letter provided Mr. Taylor a deadline of May 4, 2022, to dispute the alleged debt, request validation, and/or request the name and address of the original creditor.

84.     Pursuant to the 15 U.S.C. § 1692g(b), in the relevant part, "…Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

85.     Plaintiffs became confused by the two different collection letters received from JBLLC and the contradictory dispute deadlines.

86.     On one hand, JBLLC provided Ms. Taylor a deadline of May 1, 2022 to dispute the alleged debt and/or request verification of the alleged debt, and on the other hand, JBLLC provided Mr. Taylor a deadline of May 4, 2022 to dispute the same alleged debt and/or request verification of the same alleged debt.

87.     Prior to JBLLC sending the March 22, 2022 letter and March 25, 2022 letter, Plaintiffs had retained counsel.

88.     In fact, on June 3, 2019, counsel for Plaintiffs sent Lending Club a letter notifying Lending Club, among other things, that Plaintiffs were represented by counsel with respect to the alleged debt owed to Lending Club.

89.     Further, Plaintiffs' counsel demanded that Lending Club cease and desist from any and all future communication with Plaintiffs directly.

90.     Thereafter, the alleged debt was allegedly sold, transferred, and/or assigned to CKS.

91.     Upon information and belief, Lending Club upon transferring Plaintiffs' account to CKS the CSV, Excel, or other file indicated that The Ferrer Law Firm, PA represented Plaintiffs.

92.     Upon information and belief, the CSV, Excel, and/or other file that was transferred from Lending Club to CKS indicated represented by attorney, or some other indicator, that provided CKS notice that Plaintiffs were represented by counsel.

93.     Upon information and belief, the CSV, Excel, and/or other file that was transferred from Lending Club to CKS indicated cease and desist, or some other indicator, that provided CKS notice of Plaintiffs' cease and desist from future communication with Plaintiffs directly.

94.     CKS knew Plaintiffs were represented by The Ferrer Law Firm, PA when it placed the alleged debt with JBLLC in an attempt to collect the alleged debt.

95.     CKS knew Plaintiffs provided notice of a written cease and desist when it placed the alleged debt with JBLLC in an attempt to collect the alleged debt.

96.     In spite of having notice from Plaintiffs' counsel of its representation, JBLLC sent Plaintiffs the March 22, 2022 letter and March 25, 2022 letter.

97.     In spite of having notice of a written cease and desist, JBLLC sent Plaintiffs the March 22, 2022 letter and March 25, 2022 letter.

98.     Defendants intentionally or negligently contact consumers who Defendants know are represented by counsel, or Defendants lack reasonable policies and procedures to record notices of attorney representation of consumers, and regularly violate the law by communicating with consumers after receipt of notices of attorney representation.

99.     Upon information and belief, Defendants regularly contact consumers directly who Defendants know or should know are represented by counsel.

100.    Defendants intentionally or negligently contact consumers who Defendants know have previously provided a written cease and desist from future communication, or Defendants lack reasonable policies and procedures to record written cease and desist notices from consumers, and regularly violate the law by communicating with consumers after receipt of cease and desist notices.

101.    Upon information and belief, Defendants regularly contact consumers directly who Defendants know or should know have previously provided written cease and desist notices.

102.    CKS is liable for any acts or omissions of the debt collectors it retains.

103.    The acts of Defendants as described in this Complaint were performed by Defendants or on Defendants' behalf by its owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority.  As such, all references to "Defendants" in this Complaint shall mean Defendants or their owners, officers, agents, and/or employees.

104.    Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiffs or with reckless disregard for the harm to Plaintiffs that could result from Defendants' conduct.

105.    Plaintiffs justifiably fear that, absent this Court's intervention, Defendants will continue to use abusive, deceptive, unfair, and unlawful means in attempts to collect the alleged debt and other alleged debts.

106.    Plaintiffs justifiably fear that, absent this Court's intervention, Defendants will ultimately cause Plaintiffs unwarranted economic harm.

107.    Plaintiffs justifiably fear that, absent this Court's intervention, Defendants will ultimately cause Plaintiffs unwarranted harm to Plaintiffs' credit rating.

108.    Plaintiffs justifiably fear that, absent this Court's intervention, Defendants will ultimately cause Plaintiffs to be sued.

109.    A favorable decision herein would serve to deter Defendants from further similar conduct.

### - FIRST CAUSE OF ACTION -
### VIOLATION OF 15 U.S.C. §§ 1692c(b) and 1692f

110.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully restated herein.

111.    Congress enacted the FDCPA upon finding that debt collection abuse by debt collectors was a widespread and serious national problem.  *See* S. Rep. No. 95-382, at 2 (1977) *reprinted in* U.S.C.C.A.N. 1695, 1696; 15 U.S.C § 1692(a).

112.    The purpose of the FDCPA is to protect consumers from deceptive or harassing actions taken by debt collectors, with the aim of limiting the suffering and anguish often inflicted by debt collectors.  *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).

113.    To further these ends, "the FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."  *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

114.    The FDCPA is a strict liability statute, and a debt collector's intent may only be considered as an affirmative defense. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). A single violation of the FDCPA is sufficient to establish civil liability against a debt collector.  *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

115.    Each Plaintiff is a "consumer" as that term defined by the FDCPA.

116.    JBLLC is a "debt collector" as that term is defined by the FDCPA.

117.    CKS is a "debt collector" as that term is defined by the FDCPA.

118.    The money sought from Plaintiffs is a "debt" as that term is defined by the FDCPA.

119.    Each letter is a "communication" as that term is defined by the FDCPA.

120.    JBLLC's conveyance of Plaintiffs' personal and private information to the third party is a "communication" as that term is defined by the FDCPA.

121.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

122.    15 U.S.C.  § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with

anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

123.    The third-party vendor does not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

124.    Plaintiffs never consented to JBLLC's communication with the third-party vendor concerning the alleged debt.

125.    Plaintiffs never consented to JBLLC's communication with the third-party vendor concerning Plaintiffs' personal and/or confidential information.

126.    Plaintiffs never consented to JBLLC's communication with anyone concerning the alleged debt or concerning Plaintiffs' personal and/or confidential information.

127.    Upon information and belief, JBLLC has utilized a third-party vendor for these purposes thousands of times.

128.    JBLLC utilizes a third-party vendor in this regard for the sole purpose of maximizing its profits.

129.    JBLLC utilizes a third-party vendor without regard to the propriety and privacy of the information which it discloses to such third-party.

130.    JBLLC utilizes a third-party vendor with reckless disregard for the harm to Plaintiffs and other consumers that could result from JBLLC's unauthorized disclosure of such private and sensitive information.

131.    JBLLC utilizes a third-party vendor with reckless disregard for Plaintiffs' right to privacy.

132.    JBLLC utilizes a third-party vendor with reckless disregard for Plaintiffs' right against public disclosure of Plaintiffs' private facts.

14

133.    JBLLC violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiffs' alleged debt to the third-party vendor.

134.    15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

135.    The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

136.    JBLLC disclosed Plaintiffs' private and sensitive information to the third-party vendor.

137.    JBLLC violated 15 U.S.C. § 1692f when it disclosed Plaintiffs' private and sensitive information to the third-party vendor.

138.    As relevant here, Congress enacted the FDCPA upon finding that existing laws and procedures for redressing invasions of individual privacy during the debt collection process were inadequate to protect consumers.  15 U.S.C. § 1692(a)-(b).

139.    Specifically, Congress sought to protect consumers from communications by debt collectors to third parties.  *See* S. Rep. No. 95-382, at 4 (1977) *reprinted in* U.S.C.C.A.N. 1695, 1698.

140.    As such, a violation of Section 1692c(b) has a close relationship to an invasion of privacy.

141.    A violation of Section 1692c(b) is an invasion of privacy.

142.    As described herein, JBLLC violated Section 1692c(b).

143.    As described herein, JBLLC invaded Plaintiffs' privacy.

144.    A violation of Section 1692c(b) also has a close relationship to a public disclosure of private facts.

145.    A violation of Section 1692c(b) is a public disclosure of private facts.

146.    As described herein, JBLLC violated Section 1692c(b).

147.    As described herein, JBLLC publicly disclosed Plaintiffs' private facts.

148.    For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692c(b) and 1692f and are liable to Plaintiffs therefor.

149.    Defendants violated the FDCPA and are liable to each Plaintiff for statutory damages of up to $1,000.00 per defendant plus costs and attorney's fees as provided for by Section 1692k of the FDCPA.

## - SECOND CAUSE OF ACTION -
## VIOLATION OF 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)

150.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully restated herein.

151.    Congress enacted the FDCPA upon finding that debt collection abuse by debt collectors was a widespread and serious national problem.  *See* S. Rep. No. 95-382, at 2 (1977) *reprinted in* U.S.C.C.A.N. 1695, 1696; 15 U.S.C § 1692(a).

152.    The purpose of the FDCPA is to protect consumers from deceptive or harassing actions taken by debt collectors, with the aim of limiting the suffering and anguish often inflicted by debt collectors.  *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).

153.    To further these ends, "the FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."  *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

154.    The FDCPA is a strict liability statute, and a debt collector's intent may only be considered as an affirmative defense. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir.

16

2010). A single violation of the FDCPA is sufficient to establish civil liability against a debt collector. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

155.    Each Plaintiff is a "consumer" as that term defined by the FDCPA.

156.    JBLLC is a "debt collector" as that term is defined by the FDCPA.

157.    CKS is a "debt collector" as that term is defined by the FDCPA.

158.    The money sought from Plaintiffs is a "debt" as that term is defined by the FDCPA.

159.    Each letter is a "communication" as that term is defined by the FDCPA.

160.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

161.    15 U.S.C. § 1692c(a)(2) prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address…"

162.    The letters demanded payment from Plaintiffs directly and were not sent to Plaintiffs' attorney, despite the fact that Defendants knew that Plaintiffs were represented by counsel regarding the alleged debt, in violation of 15 U.S.C. § 1692c(a)(2) of the FDCPA.

163.    15 U.S.C. § 1692c(c) prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "If a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

164.    The letters demanded payment from Plaintiffs directly and were not sent to Plaintiffs' attorney, despite the fact that Defendants knew that Plaintiffs previously provided a

written cease and desist from further communication directly from JBLLC, in violation of 15 U.S.C. § 1692c(c) of the FDCPA.

165.    For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c) and are therefore liable to Plaintiffs.

166.    Defendants violated the FDCPA and are liable to each Plaintiff for statutory damages of up to $1,000.00 per defendant plus costs and attorney's fees as provided for by Section 1692k of the FDCPA.

## - THIRD CAUSE OF ACTION -
## VIOLATION OF 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10)

167.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully restated herein.

168.    Congress enacted the FDCPA upon finding that debt collection abuse by debt collectors was a widespread and serious national problem.  *See* S. Rep. No. 95-382, at 2 (1977) *reprinted in* U.S.C.C.A.N. 1695, 1696; 15 U.S.C § 1692(a).

169.    The purpose of the FDCPA is to protect consumers from deceptive or harassing actions taken by debt collectors, with the aim of limiting the suffering and anguish often inflicted by debt collectors. *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).

170.    To further these ends, "the FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

171.    The FDCPA is a strict liability statute, and a debt collector's intent may only be considered as an affirmative defense. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir.

2010). A single violation of the FDCPA is sufficient to establish civil liability against a debt collector. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

172.    Each Plaintiff is a "consumer" as that term defined by the FDCPA.

173.    JBLLC is a "debt collector" as that term is defined by the FDCPA.

174.    CKS is a "debt collector" as that term is defined by the FDCPA.

175.    The alleged debt is a "debt" as that term is defined by the FDCPA.

176.    Each letter is a "communication" as that term is defined by the FDCPA.

177.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

178.    15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in conduct the natural consequence of which is to harass, abuse, and/or oppress.

179.    15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

180.    15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

181.    15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

182.    An allegation by a debt collector that a consumer owes a debt to a certain entity when the consumer does not owe a debt to that entity is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

183.    An allegation by a debt collector that a consumer owes a certain amount of money when the consumer does not owe that amount is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

184.    As set forth above, Plaintiff did not owe the alleged debt to CKS.

185.    As set forth above, Plaintiff did not owe the alleged debt to JBLLC.

186.    As such, Defendants' allegation that Plaintiff owed the alleged debt to CKS is conduct the natural consequence of which is to harass, abuse, and/or oppress in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692d.

187.    As such, Defendants' allegation that Plaintiff owed the alleged debt to CKS is a false, deceptive, and/or misleading representation made in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692e.

188.    Defendants' allegation that Plaintiff owed the alleged debt to CKS is a false, deceptive, and/or misleading representation made in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692e.

189.    Defendants' allegation that Plaintiff owed the alleged debt to CKS is a false representation of the character, amount, and/or legal status of the alleged debt in violation of 15 U.S.C. § 1692e(2)(A).

190.    Defendants' allegation that Plaintiff owed the alleged debt to CKS is a false representation made in an attempt to collect the alleged debt in violation of 15 U.S.C. § 1692e(10).

191.    For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10), and are liable to Plaintiff therefor.

192.    Defendants violated the FDCPA and are liable to each Plaintiff for statutory damages of up to $1,000.00 per defendant plus costs and attorney's fees as provided for by Section 1692k of the FDCPA.

**- FOURTH CAUSE OF ACTION -**
**VIOLATION OF 15 U.S.C. §§ 1692g(a)(1) and 1692g(a)(2)**

193.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully restated herein.

194.    Congress enacted the FDCPA upon finding that debt collection abuse by debt collectors was a widespread and serious national problem.  *See* S. Rep. No. 95-382, at 2 (1977) *reprinted in* U.S.C.C.A.N. 1695, 1696; 15 U.S.C § 1692(a).

195.    The purpose of the FDCPA is to protect consumers from deceptive or harassing actions taken by debt collectors, with the aim of limiting the suffering and anguish often inflicted by debt collectors.  *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).

196.    To further these ends, "the FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."  *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

197.    The FDCPA is a strict liability statute, and a debt collector's intent may only be considered as an affirmative defense. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). A single violation of the FDCPA is sufficient to establish civil liability against a debt collector.  *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

198.    Each Plaintiff is a "consumer" as that term defined by the FDCPA.

199.    JBLLC is a "debt collector" as that term is defined by the FDCPA.

200.    CKS is a "debt collector" as that term is defined by the FDCPA.

201.    The alleged debt is a "debt" as that term is defined by the FDCPA.

202.    Each letter is a "communication" as that term is defined by the FDCPA.

203.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

204.    15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

205.    As relevant here, 15 U.S.C. § 1692g(a)(1) requires the written notice provide a statement of the amount of the debt.

206.    To comply with 15 U.S.C. § 1692g(a)(1), the statement of the amount of the debt must accurately set forth the actual amount of the debt.

207.    A statement of the amount of the debt, when the debt is not owed at all by the consumer, violates 15 U.S.C. § 1692g(a)(1).

208.    As set forth above, Plaintiffs did not owe the claimed amount to CKS.

209.    As set forth above, Plaintiffs did not owe the claims amount to JBLLC.

210.    As such, Defendants did not accurately set forth the actual amount of the alleged debt as required by 15 U.S.C. § 1692g(a)(1).

211.    In sum, Defendants' statement of the amount of the alleged debt, when Plaintiffs did not owe that amount, violates 15 U.S.C. § 1692g(a)(1).

212.    As also relevant here, 15 U.S.C. § 1692g(a)(2) requires the written notice provide a statement of the name of the creditor to whom the debt is owed.

213.    To comply with 15 U.S.C. § 1692g(a)(2), the statement of the name of the creditor to whom the debt is owed must accurately set forth the name of the entity that actually owns the debt.

214.    A statement of the name of the creditor to whom the debt is owed, when the consumer does not owe money to the stated entity, violates 15 U.S.C. § 1692g(a)(2).

215.    As set forth above, Plaintiffs did not owe money to CKS.

216.    As set forth above, Plaintiffs did not owe money to JBLLC.

217.    As such, Defendants did not accurately set forth the name of the entity that actually owns the debt as required by 15 U.S.C. § 1692g(a)(2).

218.    In sum, Defendants statement that CKS was the name of the creditor to whom the alleged debt was owed, when Plaintiffs did not owe any money to CKS, violates 15 U.S.C. § 1692g(a)(2).

219.    For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692g(a)(1), and 1692g(a)(2), and are liable to Plaintiffs therefor.

220.    Defendants violated the FDCPA and are liable to each Plaintiff for statutory damages of up to $1,000.00 per defendant plus costs and attorney's fees as provided for by Section 1692k of the FDCPA.

### - FIFTH CAUSE OF ACTION -
### VIOLATION OF 15 U.S.C. § 1692g(b)

221.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully restated herein.

222.    Congress enacted the FDCPA upon finding that debt collection abuse by debt collectors was a widespread and serious national problem.  *See* S. Rep. No. 95-382, at 2 (1977) *reprinted in* U.S.C.C.A.N. 1695, 1696; 15 U.S.C § 1692(a).

223.    The purpose of the FDCPA is to protect consumers from deceptive or harassing actions taken by debt collectors, with the aim of limiting the suffering and anguish often inflicted by debt collectors.  *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).

224.    To further these ends, "the FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent

effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

225. The FDCPA is a strict liability statute, and a debt collector's intent may only be considered as an affirmative defense. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). A single violation of the FDCPA is sufficient to establish civil liability against a debt collector. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

226. Each Plaintiff is a "consumer" as that term defined by the FDCPA.

227. JBLLC is a "debt collector" as that term is defined by the FDCPA.

228. CKS is a "debt collector" as that term is defined by the FDCPA.

229. The alleged debt is a "debt" as that term is defined by the FDCPA.

230. Each letter is a "communication" as that term is defined by the FDCPA.

231. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

232. The March 22, 2022 letter sent to Ms. Taylor stated, in the relevant part, "**Call or write to us by May 01, 2022, to dispute all or part of the debt.** If you do not, we will assume that our information is correct."

233. The March 22, 2022 letter provided Ms. Taylor a deadline of May 1, 2022, to dispute the alleged debt, request validation, and/or request the name and address of the original creditor.

234. The March 25, 2022 letter sent to Mr. Taylor stated, in the relevant part, "**Call or write to us by May 04, 2022, to dispute all or part of the debt.** If you do not, we will assume that our information is correct."

24

235.    The March 25, 2022 letter provided Mr. Taylor a deadline of May 4, 2022, to dispute the alleged debt, request validation, and/or request the name and address of the original creditor.

236.    Pursuant to the 15 U.S.C. § 1692g(b), in the relevant part, "…Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

237.    Plaintiffs became confused by the two different collection letters received from JBLLC and the contradictory dispute deadlines.

238.    On one hand, JBLLC provided Ms. Taylor a deadline of May 1, 2022 to dispute the alleged debt and/or request verification of the alleged debt, and on the other hand, JBLLC provided Mr. Taylor a deadline of May 4, 2022 to dispute the same alleged debt and/or request verification of the same alleged debt.

239.    For the foregoing reasons, Defendants violated 15 U.S.C. § 1692g(b), and are liable to Plaintiffs therefor.

240.    Defendants violated the FDCPA and are liable to each Plaintiff for statutory damages of up to $1,000.00 per defendant plus costs and attorney's fees as provided for by Section 1692k of the FDCPA.

## **JURY DEMAND**

241.    Plaintiffs demand a trial by jury on all issues.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request the following relief:

      a.    A determination that Defendants have committed the violations of law alleged in this action.

b. Statutory damages of up to $1,000.00 for each Plaintiff against each Defendant pursuant to 15 U.S.C. § 1692k for Plaintiffs' FDCPA causes of action.

c. The costs of this action and attorneys' fees as allowed by law.

d. Pre-judgment and post-judgment interest as allowed by law; and

e. Such other and further relief that the Court determines is just and proper.

DATED: March 16, 2023

Respectfully Submitted,

**HALVORSEN KLOTE**

By:      /s/ Joel S. Halvorsen

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com